# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 01-064V
(Not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MAREK MILIK and JOLANTA MILIK,
legal guardians and parents of AM,

             Petitioners,

             v.

SECRETARY OF HEALTH AND
HUMAN SERVICES

             Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Filed: August 31, 2017

Decision on Attorneys' Fees and
Costs; Attorney Hourly Rates;
Reasonable Basis

*Robert Krakow, New York, NY, for Petitioners.*
*Lisa Watts, U.S. Department of Justice, Washington DC, for Respondent.*

## DECISION AWARDING ATTORNEYS' FEES AND COSTS

**HASTINGS,** *Special Master*.

      In this case under the National Vaccine Injury Compensation Program (hereinafter "the Program"[1]), Petitioners seek, pursuant to 42 U.S.C. § 300aa-15(e)(1), an award for attorneys' fees and other costs incurred in attempting to obtain Program compensation. After careful consideration, I have determined to grant the request in substantial part, and deny it in part.

---

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2012 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2012 ed.). The statutory provisions defining the Program are also sometimes referred to as the "Vaccine Act."

1

# I

# BACKGROUND LAW CONCERNING ATTORNEYS' FEES AND COSTS AWARDS

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. §300aa–15(e)(1). This is true even when a petitioner is unsuccessful on the merits of the case -- in such cases, a special master "may" award fees, if the petition was filed in good faith and with a reasonable basis.[2] *Id.* "The determination of the amount of reasonable attorneys' fees is within the special master's discretion." *Saxton v. HHS,* 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS,* 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the *petitioner* to demonstrate that the attorneys' fees claimed are "reasonable." *Sabella v. HHS,* 86 Fed. Cl. 201, 215 (2009); *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Rupert v. HHS,* 52 Fed. Cl. 684, 686 (2002); *Wilcox v. HHS,* No. 90–991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees. *Perreira v. HHS,* 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994).

One test of the "reasonableness" of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure. *Riggins v. HHS,* No. 99–382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd by unpublished order* (Fed. Cl. Dec. 10, 2009), *aff'd,* 406 Fed. App'x. 479 (Fed. Cir. 2011); *Sabella v. HHS,* No. 02–1627V, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *aff'd in part and rev'd in part,* 86 Fed. Cl. 201 (2009). In this regard, the United States Court of Appeals for the Federal Circuit has noted that:

> [i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Saxton*, 3 F.3d at 1521 (emphasis in original) (quoting *Hensley*, 461 U.S. at 433–34). Therefore, in assessing the number of hours reasonably expended by an attorney, the court must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see also Riggins*, 2009 WL 3319818, at *4.

The Federal Circuit has also made clear that special masters may rely on their prior experience in making reasonable fee determinations, without conducting a line-by-line analysis of the fee bill, and are not required to rely on specific objections raised by respondent. *See Saxton*, 3 F.3d at 1521; *Sabella*, 86 Fed. Cl. 201, 209 (2009); *see also Wasson v. HHS*, 24 Cl. Ct. 482, 484, 486 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993) (holding that, in determining a

---

[2] In this case, I find that the claim was initiated in good faith and with a reasonable basis. However, as will be explained below, I find that Mr. Krakow's decision to appeal this case beyond the U.S. Court of Appeals was *not* reasonable.

2

reasonable number of hours expended in any given case, a special master may rely on her experience with the Vaccine Act and its attorneys, without basing his decision on a line-by-line examination of the fee application). A unanimous Supreme Court has articulated a similar holding:

> We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

*Fox v. Vice*, 563 U.S. 826, 838

## II

## PROCEDURAL HISTORY

Petitioner Marek Milik[3] filed a *pro se* petition under the Vaccine Act on January 31, 2001, alleging that his son, AM, was injured by an MMR vaccination given to him on January 29, 1998. (Petition at 1.) The Secretary of Health and Human Services ("Respondent") filed a report, on June 1, 2001, opposing the petition for compensation. (*See* ECF No. 6.) Proceedings were delayed for several years at the Petitioner's request, to allow time to obtain counsel and to assemble and file expert reports. However, status reports were filed when necessary, and status conferences were held periodically throughout the duration of this case.

Dr. Adrian Logush, a pediatric neurologist, wrote a report, which Petitioners filed on November 21, 2007. (ECF No. 48.) On March 27, 2008, Respondent filed the expert report of Dr. Michael Kohrman. (ECF No. 53.) However, the Petitioners then elected *not* to proceed to an evidentiary hearing with Dr. Logush as their expert. They instead continued to seek a more persuasive expert report for yet another four years.

Mr. Marek represented his son as a *pro se* petitioner until August 7, 2009, when attorney Robert Krakow became counsel of record. (ECF No. 61.)

---

[3] The original Petitioner was Marek Milik, who represented his minor son, AM. However, on July 11, 2013, I granted a motion to amend the caption. (Order, ECF No. 142.) The altered caption indicated that AM was represented by *both* of his parents, Petitioners Marek Milik and Jolanta Milik. (*Id.*) On April 30, 2014, the caption of this case was further amended both to redact AM's name to protect his privacy, and to indicate that while AM is no longer a minor, he is still being represented by his parents because he is a person with a disability requiring guardianship. (ECF Nos. 161, 163.)

3

Petitioner filed multiple medical records in 2011 (ECF Nos. 82, 83), followed by an expert report by Dr. Nizar Souayah, on November 10, 2011 (ECF. No. 84). Respondent filed a supplemental expert report by Dr. Kohrman, responsive to Dr. Souayah's report, on March 5, 2012. (ECF No. 88.)

Once Petitioner and Respondent filed their expert reports, and Petitioner filed the appropriate medical records, I conducted an evidentiary hearing on March 7, 2013. (*See* Transcript, ECF No. 129.) At the hearing, Petitioner presented oral testimony from Dr. Nizar Souayah, while Respondent relied on Dr. Kohrman. (*Id.*)

Shortly after the hearing, Petitioner filed a Motion for Interim Attorneys' Fees and Costs. (ECF No. 126.) On April 16, 2013, the parties jointly filed a Stipulation concerning interim fees (ECF No. 132). I filed a Decision on the same day, awarding Petitioner a total of $169,624, representing attorneys' fees of $130,723, attorneys' costs of $36,901, and Petitioner's own costs of $2,000. (ECF No. 133.) The fees and costs incurred by the Petitioners *after* the time period addressed by the interim fees decision is the matter under consideration here.

Petitioners' post-hearing brief was filed on August 12, 2013 (ECF No. 147.) Respondent filed a post-hearing brief in response on September 30, 2013. (ECF No. 148.) Petitioners filed a reply brief on November 27, 2013. (ECF No. 153.)

On October 29, 2014, I filed my Decision in this case, which denied entitlement to compensation under the Vaccine Act. (ECF No. 164.)

Petitioners filed a Motion for Review of that decision on November 28, 2014 (ECF No. 166), and Respondent filed a Response on December 18, 2014 (ECF No. 168). The opinion of Chief Judge Patricia Campbell-Smith was filed in the U.S. Court of Federal Claims, on April 29, 2015, denying Petitioners' motion for review. (ECF No. 169)

Thereafter, Petitioners filed an appeal with the U.S. Court of Appeals for the Federal Circuit, on July 2, 2015. (ECF No. 172.) After due consideration, the appellate judicial panel filed a ruling on May 20, 2016, which affirmed the underlying decisions. *Milik v. HHS*, 822 F.3d 1367 (Fed. Cir. 2016.)

On June 30, 2016, Petitioners (Appellants) filed a Petition for Panel Rehearing combined with a Petition for Rehearing *En Banc* by the U.S. Court of Appeals for the Federal Circuit. (ECF No. 175, p. 8.) Both requests were denied on August 31, 2016. (*Id.*)

A Petition for Writ of Certiorari was filed with the U.S. Supreme Court on November 29, 2016. (*Id.*) This petition was denied on May 30, 2017.

Petitioners filed an application for final attorneys' fees and costs ("Application") on August 12, 2017, requesting a total of $190,039 for attorneys' fees, and $18,042 for attorneys' costs. (ECF No. 175, p. 1.) On August 22, 2017, Respondent filed a Response to Petitioner's application, recommending "that the Special Master exercise his discretion and determine a

reasonable award for attorneys' fees and costs." (ECF No. 176, p. 3.) On August 27, 2017, Petitioners filed a Reply to Respondent's Response. (ECF No. 177.)

## III
## DISCUSSION

### A. Good faith and reasonable basis

Respondent's Response to Petitioners' application states that "Respondent is satisfied that the statutory requirements for an award of attorneys' fees and costs are met in this case." (ECF No. 176, p. 2) I conclude that Petitioners initially prosecuted this case in "good faith' and with a "reasonable basis," as required by the Vaccine Act. *See* 42 U.S.C. §300aa-15(e)(1)(A)-(B). However, I find that the subsequent petitions for a panel rehearing, a rehearing *en banc*, and a writ of *certiorari* to the U.S. Supreme Court lacked a reasonable basis, as will be further discussed in Sec. III(C).

### B. Hourly rates

There were three lawyers who billed at attorneys' hourly rates for participating in the presentation of Petitioners' case: Robert Krakow, Susan Lee and Gilbert Gaynor. (ECF No. 175, pp. 18-19.) In addition, Mr. Krakow occasionally billed his own hours at a paralegal rate for non-attorney work that he performed (see ECF No. 175-2, pp. 1, 4, 8, 9, 13, 24, 26), and for non-attorney work performed by attorney Helen Sturm (see ECF No. 175-2, p. 18.)

#### 1. Hourly rates of Robert Krakow

Mr. Krakow has been engaged in the practice of law for 37 years, and he has practiced in the Vaccine Injury Compensation Program for 14 years. (ECF No. 175-1, pp. 3, 6.) His billing record indicates the following hourly rates: $385 per hour in 2013, $396 per hour in 2014, $413 per hour in 2015, and $425 per hour in 2016. (*Id*., p. 3.) These requested rates for 2013 to 2016 are within the ranges set forth in *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323, *16 (Fed. Cl. Spec. Mstr. Sept 1, 2015), and the Office of Special Masters ("OSM") suggested fee schedules.[4] Furthermore, there are various decisions by special masters who have determined that these rates are reasonable compensation for Mr. Krakow's legal services. *See e.g., Laderer v. HHS*, No. 09-097V, 2016 WL 3044838, at *3 (Fed. Cl. Spec. Mstr. Apr. 20 2016); *R.V. v HHS*, No. 08-504V, 2016 WL 7575568 (Fed. Cl. Spec. Mstr. Nov. 28, 2016). I find that Mr. Krakow is entitled to the hourly rates that he requested, as these amounts are reasonable for an attorney with his level of experience.

#### 2. Hourly rates of Susan Lee

Ms. Lee' requested billing rate is $330 per hour in 2013, $340 per hour in 2014, and $360 per hour in 2015. (See ECF No. 175-2, p. 45.) She has been practicing law in the New York City area since 1996. The requested rates fall within the ranges set forth in *McCulloch*, and in

---

[4] See United States Court of Federal Claims – Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedules, available at http://www.uscfc.uscourts.gov/node/2914 (last accessed August 23, 2017).

the OSM suggested fee schedules. Also, compensation at these rates was previously awarded for Ms. Lee's services in *Moritz v. HHS*, No. 15-965V, 2016 WL 8786193, at *4 (Fed. Cl. Spec. Mstr. Dec. 12, 2016) and *R.V. v. HHS*, 2016 WL 7575568, at *2. I find that the hourly rates requested by Ms. Lee are reasonable in this case.

### 3. Hourly rates of Gilbert Gaynor

In Section II(C) of this opinion, I explain why Petitioners' award for attorneys' fees and costs will not include compensation for any of the hours expended by Mr. Gaynor in this case. Accordingly, it is not necessary to discuss his hourly rate of payment.

### 4. Paralegal hourly rates

As mentioned above, attorneys Robert Krakow and Helen Sturm performed paralegal work on this case, billing at a rate of $125 per hour (and at $140 per hour in 2017) to prepare binders and exhibits, and similar tasks. These billing rates have been found appropriate for paralegal-type work performed by Mr. Krakow and other lawyers. See e.g., *Moritz*, 2016 WL 8786193, at *5; *Laderer*, 2016 WL 3044838, at *3. I find that a rate of $125 per hour (and $140/hr. in 2017) is reasonable for the paralegal work performed in this case.

## C. Number of hours

As previously noted, when calculating the number of hours reasonably expended by an attorney, the court must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see also Riggins*, 2009 WL 3319818, at *4.

### 1. Hours expended between April 1, 2013 and June 5, 2016

Petitioners filed their Application for *interim* attorneys' fees and costs on March 31, 2013, requesting an award for the time spent until that date. (ECF No. 126.) On April 1, 2013, counsel commenced billing for time spent preparing their post-hearing briefs and subsequent appeals. I find that the number of hours requested by Petitioners for work performed on these matters, *until June 5, 2016*, were reasonable and should be compensated.

### 2. Hours expended on June 6, 2016 and thereafter

Mr. Krakow participated in the oral argument regarding this case before the U.S. Court of Appeals for the Federal Circuit, on March 23, 2016. (ECF No. 175-2, pp. 27-28.) Thereafter, he reasonably billed a very small amount of time (1.8 hours) on various tasks related to that appeal. (*Id.*, p. 28.) However, beginning on June 6, 2016, Mr. Krakow commenced billing for activities related to his applications for rehearing the case in the Federal Circuit, and for his certiorari petition to the U.S. Supreme Court. (*Id.*)

In *Milik v. HHS*, 822 F.3d 1367 (Fed. Cir. 2016), the Court of Appeals offered the following assessment: "The Miliks essentially ask this court to reweigh the factual evidence and

6

assess the credibility of the witnesses. As an appellate tribunal, we can do neither." *Id. at 1376,* c*iting Porter v. HHS*, 633 F.3d 1242, 1249 (Fed. Cir. 2011). Nonetheless, the Court of Appeals carefully considered Petitioners' arguments concerning facts and credibility, and held that "the special master's decision was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.*, at 1382, *citing* 42 U.S.C. §300aa-12(e)(2)(B). This ruling affirmed the decision of Chief Judge Campbell-Smith of the U.S. Court of Federal Claims, who had applied the statutory standard of review to deny Petitioners' Motion for Review.

This affirmance concluded with the comment that the Federal Circuit had found Petitioners' "remaining arguments unpersuasive." *Milik,* 822 F.3d 1367, at 1382. What were those other arguments? Petitioners also argued that:

> [T]he Vaccine Act unconstitutionally denies them access to de novo review in an Article III court. Specifically, they argue that, by limiting a Vaccine injury claimant to filing a claim against the Secretary in an Article I court, "the Vaccine Act has deprived petitioners of the rights granted in Article III of the United States Constitution and the common law protections afforded in state courts for tortious injuries against the manufacturers of vaccines."

*Id*. at 1376 (*quoting* Petitioners' appellate brief.) This argument contemplates the constitutionality of one aspect of the Vaccine Act; that is, the applicable standard of review for appeals of decisions by special masters in the Vaccine Program. This is a matter that may be appropriate for the Court of Appeals to address, unlike Petitioners' attempt to re-litigate the special master's determinations concerning facts and witness credibility. And, Petitioners' counsel made a colorable argument that the contested statutory standard of review prevented Petitioners from receiving *de novo* consideration of the merits of their case, based on a reexamination of the existing record.

The Court of Appeals considered Petitioners' constitutionality arguments, and rejected them, concluding that, "we continue to review the special master's findings of fact under the deferential arbitrary and capricious standard." *Id.* at 1378-9. Then, the court applied that standard to this case, and reached a final decision.

I have reviewed the Court of Appeals' opinion carefully, and weighed the persuasiveness of Petitioners' constitutionality arguments before the Federal Circuit, concluding that they were tenuous and unconvincing. *See Milik*, 822 F.3d, at 1382 (stating "we find the Miliks' remaining arguments unpersuasive."). My first inclination would be to find this entire appeal an unnecessary and unreasonable misuse of the Vaccine Program. Yet, giving counsel in this case the benefit of the doubt, I find that the *initial appeal* to the Federal Circuit was not wholly unreasonable, and I will compensate counsel for that appeal.

However, after the court panel published their emphatic decision, the likelihood that Petitioners might receive a more favorable outcome in a panel re-hearing, or an *en banc* re-hearing, was virtually nil. The choice by Petitioners' counsel to continue appealing further demonstrates poor judgment. Even worse, counsel chose to retain an appellate specialist, Mr. Gaynor, and expend more than 100 attorney hours on a petition for certiorari.

Petitioners' counsel insists that Respondent's waiver, on January 3, 2017, of Respondent's right to respond to the petition for *certiorari* is quite significant. (*See* ECF No. 175, p. 8.) In my opinion, it merely signifies that Respondent did not consider a response necessary or worthwhile. Petitioners' counsel also emphasizes that after this waiver, the U.S. Supreme Court actually requested a response from Respondent concerning Petitioners' constitutional issue. (*Id.*, p. 10.) Counsel argues that this "request for a response by the Supreme Court establishes, at least, that petitioners had a reasonable basis to pursue the Constitutional issue." (*Id.*)

I disagree with this assertion. After reviewing the petition for *certiorari* and the requested response from Respondent, the Supreme Court rejected the petition for *certiorari*, without written comment. *Milik v. Price*, 137 S. Ct. 2206 (2017). I cannot conclude from this sequence of events that there was a reasonable basis to proceed further, especially in light of the determination by the Federal Circuit that Petitioners' arguments regarding constitutionality were "unpersuasive." *Milik*, 822 F.3d, at 1382. Accordingly, I will not award any of the requested fees for hours spent by Petitioners' counsel and staff concerning the petition for panel rehearing on rehearing *en banc*, since those efforts were unreasonable. Likewise, I will not award any attorneys' fees or costs for the petition for certiorari to the U.S. Supreme Court, because that effort was also unreasonable.

### a. *Hours billed by Mr. Krakow*

The 44.4 hours billed by Mr. Krakow in 2016 to continue appellate litigation of this matter after June 5, 2016, will not be compensated. (*See* ECF No. 175-2, pp. 28-39.) Likewise, in 2017, Mr. Krakow will not be compensated for another 5.1 hours billed for time he expended on matters related to the certiorari petition. (*Id.*, pp. 39-40.)

In 2017, Mr. Krakow expended 10.2 hours billed at an attorney's rate ($435 per hour), and 6.5 hours billed at a paralegal rate ($140 per hour), to assemble the *final* application for attorneys' fees and costs. I find that this constitutes a reasonable amount of time to prepare the application, and that the division of attorney's hours and paralegal hours is appropriate.

### b. *Hours billed by Ms. Lee*

The hours billed by Ms. Lee in 2013, 2014 and 2015, were reasonable and will be compensated in the award.

### c. *Hours billed by Mr. Gaynor*

Attorney Gilbert Gaynor states that he expended 34.4 hours in 2016, and 35.1 hours in 2017, working on Petitioners' petition for *certiorari* to the Supreme Court. (*See* Declaration of Gilbert Gaynor, ECF No. 175-6.) The hours he billed commence on September 9, 2016; that is, more than three months after publication of the Federal Circuit decision in this case. (ECF No. 175-7, p. 1.)

As previously explained in this Section, *all* of these hours pertain to the work he performed preparing the *certiorari* petition. I have concluded that pursuit of an appeal of this matter to U.S. Supreme Court was entirely unreasonable. Accordingly, Petitioners will not be compensated for these hours.

### D. Attorneys' costs

The Petitioners themselves did not have any litigation expenses during the time period covered by their Final Application for attorneys' fees and costs. (ECF No. 175-4.) However, Petitioners' counsel requests compensation for $18,041.35 of *attorneys'* expenses incurred during that time period. (See ECF Nos. 175, p. 19, and 175-1, p 12.) Counsel states that "the documents and receipts supporting the costs claimed are filed as Exhibit 38-Tab 3 accompanied by a Table listing the costs and corresponding supporting receipts." (ECF No. 175-1, p. 11.)

My examination of the "Table" listing costs reveals that Petitioners' counsel has documented a total of $16,993.85 (hereinafter, "$16,994"). (ECF Nos. 175-3, p. 1, and 175-2, p. 43.) Therefore, since the difference between the $18,041 claimed, and the $16,994 actually documented is not explained, I commence my analysis regarding costs based on the latter amount, which was documented.

The particular items described in the Table (ECF No. 175-3, p. 1) constitute primarily the reasonable costs for purchasing medical records, shipping, photocopying, and travel. However, there are two items listed that pertain to the unreasonable appellate litigation that occurred after the decision of the Court of Appeals for the Federal Circuit. Those expenses are: $5,444 on 12/15/16 for "Certiorari bill;" and $1,204 on 5/2/17 for "Counsel Press for Milik Reply SCOTUS." (ECF No. 175-3, p. 1.) Together, these two entries amount to $6,648 of expenses, which will not be compensated in the award.

## IV

## CALCULATION OF THE AWARD

### A. Attorneys' Fees

#### 1. Robert Krakow

|  |  |  |  |  |
|---|---|---|---|---|
| in 2013 | 97.5 hours | @ $385/hr. | = | $37,537.50 |
| in 2014 | 59.8 hours | @ $396/hr. | = | 23,680.80 |
| in 2015 | 103.5 hours | @ $413/hr. | = | 42,745.50 |
| 67 hrs. - 44.4 hrs. in 2016 = | 22.6 hours | @ $425/hr. | = | 9605.00 |
| 15.4 hrs. – 5.2 hrs. in 2017 = | 10.2 hours | @ $435/hr. | = | 4,437.00 |
| travel time at ½ rate in 2016 | 20.8 hours | @ $212.50/hr. | = | 4,420.00 |
| at paralegal rate 2013-2016 | 39.1 hours | @ $125/hr. | = | 4,887.50 |
| at paralegal rate in 2017 | 6.5 hours | @ $140/hr. | = | 910.00 |
|  |  |  | sub-total | $ 128,223.30 |

*2. Susan Lee*

|  | in 2013 | 3.0 hours | @ $330/hr. | = | 990.00 |
|---|---|---|---|---|---|
|  | in 2014 | 4.3 hours | @ $340/hr. | = | 1,462.00 |
|  | in 2015 | 8.85 hours | @ $360/hr. | = | 3,186.00 |
|  |  |  | sub-total | $ | 5,638.00 |

*3. Helen Sturm*

at paralegal rate in 2014    20.50 hours    @ $125/hr.    =    2,562.50

Total Fees    $ 136,423.80

**B. Costs**

$16,994 (documented costs) - $6,648 (unreasonable costs) = (reasonable costs) $10,346.00

**TOTAL FEES and COSTS    $146,769.80**

**V**

**CONCLUSION**

For the foregoing reasons, I hereby award the following attorneys' fees and costs pursuant to 42 U.S.C. § 300aa-15(b) and (e)(1):

- a lump sum of $146,769.80, in the form of a check payable jointly to Petitioners and Petitioners' counsel, Robert J. Krakow, on account of services performed by counsel's law firm.

In the absence of a timely-filed motion for review filed pursuant to Appendix B of the Rules of the U.S. Court of Federal Claims, the clerk of the court shall enter judgment in accordance herewith.[5]

**IT IS SO ORDERED.**

/s/ George L. Hastings, Jr.
George L. Hastings, Jr.
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing the right to seek review.